IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-00085-PAB-STV

VALERIE LASTER,

    Plaintiff,

v.

CIRCLE K STORES INC.,

    Defendant.

---

**ORDER**

---

This matter comes before the Court on the Recommendation of United States Magistrate Judge [Docket No. 39]. The magistrate judge recommends that the Court grant in part and deny in part the Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 26] filed by defendant Circle K Stores Inc. ("Circle K"). Circle K objected in part to the recommendation on June 24, 2025. Docket No. 40. On July 7, 2025, plaintiff Valerie Laster responded to Circle K's objection. Docket No. 41.

**I. BACKGROUND**

    **A. Factual Background**[1]

Ms. Laster is a sixty-five-year-old African American woman. Docket No. 23 at 2, ¶ 1. On April 7, 2024, Ms. Laster entered a Circle K's store in Westminster, Colorado seeking to load cash onto a prepaid debit card. *Id.* at 3, 7, ¶¶ 6, 15. Ms. Laster was required to wait in line before completing the transaction. *Id.* at 12, ¶ 23. The two white

---

[1] The following facts are taken from the amended complaint, Docket No. 23, and are presumed true for the purpose of ruling on defendant's motion to dismiss.

customers ahead of her in line received service with no interference.  *Id.*  However, when Ms. Laster stepped up to the counter, she was harassed by another female customer standing at the side of the counter.  *Id.*, ¶ 24.  As Ms. Laster began counting out $1,500 in cash, the other customer said to Ms. Laster, "you must be a drug dealer" and "there's no way you have that kind of money without being a drug dealer."  *Id.* at 13, ¶ 27 (emphasis omitted).  Ms. Laster asked the other customer, "so because I'm Black I can't have $1,500 unless I'm dealing drugs?"  *Id.* at 14, ¶ 28.  The other customer responded, "you aren't Black you're Brown."  *Id.*  The other customer then threatened to rob Ms. Laster five times.  *Id.*, ¶ 29.  The other customer began video recording Ms. Laster on her cellular telephone, *id.* at 15, ¶ 30, saying, "look yawl look who I found" and "hey yawl she's hood, she's from the hood, she lives in the hood."  *Id.*  The customer told Ms. Laster, "you don't live around here, I have never seen you, you've never been in this store."  *Id.*, ¶ 31.  No Circle K employees asked the other customer to stop harassing Ms. Laster or to leave the store.  *Id.* at 14, ¶ 29.  Instead, when the other customer asked the employee behind the counter, Ms. Chavez,[2] whether she had seen Ms. Laster before, Ms. Chavez responded, "nope I've never seen her in here, nor have I ever seen her in this neighborhood or walking down the street."  *Id.* at 3, 15, ¶¶ 8, 32.

      Ms. Laster asked Ms. Chavez to upload $1,500 on the prepaid debit card.  *Id.* at 7, ¶ 15.  After Ms. Chavez made several attempts to upload money on the card in increments of $1,500, $1,000, and $500, Ms. Chavez told Ms. Laster that the transaction had been declined.  *Id.*  After the third attempt, Ms. Chavez informed Ms.

---

[2] Ms. Laster does not identify the attendant beyond the attendant's last name.  *Id.* at 3, ¶ 8.

2

Laster that "the system revealed Laster's entire attempted transaction was fraudulent." *Id.* When Ms. Laster asked Ms. Chavez to explain how the transaction was fraudulent, Ms. Chavez refused to respond. *Id.*, ¶ 16. Ms. Chavez attempted to confiscate Ms. Laster's card. *Id.* at 8, ¶ 16C. Ms. Laster demanded its return. *Id.*

When Ms. Laster contacted the company that issued Ms. Laster's prepaid debit card, the company advised Ms. Laster that there were no red flags reported in its system regarding her card. *Id.* at 7, ¶ 16A.

### B. Procedural Background

On December 2, 2024, Ms. Laster filed suit against Circle K in the District Court of Jefferson County, Colorado. Docket No. 4 at 2. On January 10, 2025, Circle K removed the case to federal court. Docket No. 1. On January 30, 2025, Ms. Laster filed an amended complaint. Docket No. 23. In her amended complaint, Ms. Laster brings four claims for relief – a claim of discrimination in violation of 42 U.S.C. § 1981; a claim of discrimination in violation of Title II of the Civil Rights Act of 1964 ("Title II"), 42 U.S.C. § 2000a, *et seq*; a state law claim for intentional infliction of emotional distress; and a state law claim for negligence. *Id.* at 3-30, ¶¶ 7-60.

On February 13, 2025, Circle K filed a motion to dismiss all of Ms. Laster's claims. Docket No. 26. Ms. Laster responded, Docket No. 29, and Circle K replied. Docket No. 31. On June 9, 2025, Chief Magistrate Judge Scott Varholak issued a recommendation that the Court grant in part and deny in part Circle K's motion to dismiss. Docket No. 39. In the recommendation, Judge Varholak finds that Ms. Laster has failed to state a Title II claim because she fails to plausibly allege that Circle K is a place of public accommodation subject to Title II. *Id.* at 9 ("Courts have consistently

3

held that convenience stores and grocery stores that do not serve food for on-premises consumption do not fit this definition and are not places of public accommodation." (citing *Chandler v. Pay-n-Save, Inc.*, 2022 WL 4016807, at *5 (D.N.M. Sept. 2, 2022) (collecting cases))). He states that courts in this district have held that claims for intentional infliction of emotional distress are not meant to augment damages in federal civil rights cases. *Id.* Because Ms. Laster's claim of intentional infliction of emotional distress relies on her allegations supporting her discrimination claim, and because she does not otherwise allege outrageous conduct by Circle K, Judge Varholak recommends that the intentional infliction of emotional distress claim be dismissed. *Id.* at 11-12 (citing *Visor v. Sprint/United Mgmt. Co.*, 965 F. Supp. 31, 33 (D. Colo. 1997) ("Where the allegations forming the basis of a claim for outrageous conduct are the same as those forming the basis for a claim of discrimination, and nothing more, they fail to state an independently cognizable claim for which relief can be granted under Rule 12(b)(6)."). Judge Varholak also recommends that Ms. Laster's claim of negligence be dismissed because Ms. Laster does not allege that she suffered damages cognizable under a negligence claim. *Id.* at 14 ("Plaintiff has failed to allege the type of serious or long-term physical manifestations or mental aberrations necessary for a negligent infliction of emotional distress claim.").

However, Judge Varholak recommends that the Court deny Circle K's motion to the extent it seeks to dismiss Ms. Laster's § 1981 claim. *Id.* at 7. Judge Varholak explains that, to "establish a prima facie case of discrimination under Section 1981, a plaintiff must establish: '(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the

4

discrimination interfered with a protected activity as defined in § 1981.'" *Id.* at 5 (quoting *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001)). Judge Varholak rejects Circle K's argument that Ms. Laster has failed to plausibly allege that Ms. Chavez had the intent to discriminate on the basis of race. *Id.* Judge Varholak finds that Ms. Laster's allegations regarding the other customer calling Ms. Laster a drug dealer and stating that Ms. Laster "lives in the hood" are sufficient to plausibly allege that the customer was motivated by racial animus. *Id.* at 5-6. However, he acknowledges "the fact that another customer behaved in a racist manner does not necessarily imply that Defendant or its employees likewise acted with racial animus." *Id.* at 6. Nevertheless, Judge Varholak finds that Ms. Laster's allegations regarding Ms. Chavez are sufficient to raise a plausible inference that Ms. Chavez's refusal to serve Ms. Laster was motivated by racial animus. *Id.* Judge Varholak relies on Ms. Laster's allegations that, after the other customer told Ms. Laster that she "lives in the hood," the other customer asked Ms. Chavez whether she had seen Ms. Laster before. *Id.* Ms. Chavez said, "nope I've never seen her in here, nor have I ever seen her in this neighborhood or walking down the street," before falsely telling Ms. Laster that the transaction was declined and accusing Ms. Laster of fraud. *Id.* Taken together, Judge Varholak finds that this sequence of events raises a plausible inference that Ms. Chavez intended to discriminate against Ms. Laster on account of her race. *Id.* at 6-7.

On June 24, 2025, Circle K filed an objection to Judge Varholak's recommendation, arguing that the magistrate judge erred by holding that Ms. Laster plausibly alleges her § 1981 claim. Docket No. 40. Ms. Laster responded on July 7, 2025. Docket No. 41.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  However, a plaintiff still must provide "supporting factual averments" with her allegations.  *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based" (citation omitted)).  Otherwise, a court need not accept conclusory allegations.  *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it

6

innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

The Court will "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is proper if it is specific enough to enable the Court "to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996) (citation omitted). In light of plaintiff's *pro se* status, the Court construes her filings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### III. ANALYSIS

Circle K maintains that "the Recommendation erred and Laster's Section 1981 claim should be dismissed because her allegations do not raise an inference that Circle K intentionally discriminated against her on the basis of race." Docket No. 40 at 5. Circle K argues that Judge Varholak erred by imputing the other customer's racial animus to Circle K. *Id.* at 6 ("even if Laster adequately alleged that the Customer made racially charged statements, there is no basis to impute the Customer's biases to Ms. Chavez or Circle K"). Circle K misinterprets Judge Varholak's recommendation. Nothing in the recommendation states that the basis of Circle's K liability is the imputation of the other customer's racial animus to Circle K. *See* Docket No. 39. In fact, the recommendation states that Ms. Laster's allegations regarding the other

customer, "taken by themselves, would not be sufficient to plausibly allege discriminatory animus by Defendant." *Id.* at 6.  Instead, Judge Varholak found that Ms. Chavez's agreement with the other customer that Ms. Chavez had never seen Ms. Laster before, after the customer stated that Ms. Laster "lives in the hood," and "do[es]n't live around here," coupled with the fact that Ms. Chavez lied to Ms. Laster about the transaction being canceled and accused Ms. Laster of fraud, raises a plausible inference that Ms. Chavez's refusal to process Ms. Laster's transaction was motived by racial animus.  *Id.* at 6-7.  Therefore, the Court rejects Circle K's objection that Judge Varholak erred by imputing the racial animus of the other customer to Circle K.  Judge Varholak made no such imputation.

Circle K argues that Judge Varholak erred by holding that Circle K can be held liable under § 1981 for failing to intervene when one of its customers acts in a discriminatory manner.  Docket No. 40 at 7 ("The Recommendation did not cite any authority (and Circle K is not aware of any) to suggest that racial discrimination by a third party, or the failure to intervene in such discrimination, provides a basis for a claim under Section 1981.").  As noted above, Judge Varholak found that, based on the allegations in the amended complaint, "one may plausibly infer that Ms. Chavez acted with an intent to discriminate in declining Plaintiff's Green Dot transaction."  Docket No. 39 at 6.  Judge Varholak did not find that Circle K can be held liable under § 1981 for failing to intervene in the discriminatory conduct of its customers.

Circle K maintains that Judge Varholak erred in concluding that the allegations in the complaint plausibly allege that Ms. Laster's race was a motivating factor in Ms. Chavez's refusal to serve Ms. Chavez.  Docket No. 40 at 5.  It claims that the amended

complaint "does not contain a single allegation that indicates that Ms. Chavez acted with discriminatory intent when she failed to process Laster's transaction and allegedly accused her of fraud."  *Id.*  Circle K argues that the other customer's comments regarding where Ms. Laster lives and her accusations that Ms. Laster is a drug dealer, as well as Ms. Chavez's comment that she had not seen Ms. Laster before, do not mention Ms. Chavez's race.  *Id.* at 5-6.  Instead, Circle K asserts that Ms. Laster was the first person to mention her race.  *Id.* at 6.  As such, it claims that the allegations in the complaint do not raise a plausible inference that Ms. Chavez discriminated against Ms. Laster because of Ms. Laster's race.  *Id.*

Some courts have found that a single comment accusing an individual of being a drug dealer is insufficient to raise a plausible inference of racial animus.  *See*, *e.g.*, *Carter v. Bentley Motors Inc.*, 489 F. Supp. 3d 316, 323 (D.N.J. 2020) ("Though Plaintiff alleges that the Bentley Motors employees she spoke with admitted they were aware of her race, the allegations support a plausible claim they wanted nothing to do with her because they thought she could be . . . a drug dealer not because of her skin color.  The factual allegations regarding the Bentley Motors employees comments are simply too vague and lacking in substance to make out a claim for racial discrimination.").  Courts have reached different conclusions over whether a reference to a person's residence as a "hood" or "ghetto" raises an inference of racial discrimination.  *See House v. TH Foods, Inc.*, 2025 WL 928803, at *2 (D. Nev. Mar. 25, 2025) ("At most, he states that his manager made the comment that 'Preston lives in the hood,' . . . . Although House states that he 'was discriminated against and retaliated against because of his racial ethnicity,' this is an entirely conclusory statement and he offers no facts from which that

9

motivation can be inferred."); *Williamson v. Denk & Roche Builders, Inc.*, 2006 WL 1987808, at *3 (N.D. Ill. July 11, 2006), *abrogated on other grounds by Humphries v. CBOCS W., Inc.*, 474 F.3d 387 (7th Cir. 2007) ("Williamson undoubtedly was subjected to an offensive racist comment by O'Reilly when he said that Williamson lived near the 'ghetto.'").[3]  However, taken together, the other customer's comments that Ms. Laster is "Brown," that she sells drugs, that she lives in the "hood," and that she does not "live around here" plausibly allege that the customer's harassment of Ms. Laster was racially motivated.  *See* Docket No. 23 at 13-15, ¶¶ 27-28, 30-31.  The complaint alleges that Ms. Chavez heard the comments of the other customer and then supported them regarding Ms. Laster not being part of the neighborhood.  *See id.* at 15, ¶¶ 31-32.  Specifically, Ms. Chavez said, "nope I've never seen her in here, nor have I ever seen her in this neighborhood or walking down the street."  *Id.*, ¶ 32.  Thus, construing Ms. Laster's pro se complaint liberally, Ms. Chavez's comment is not merely a statement of her lack of familiarity with Ms. Laster, but instead bolstered the customer's assertion

---

[3] *See also Garza v. Ranier L.L.C.*, 2013 WL 3967786, at *4-5 (W.D. Tex. July 31, 2013) ("Hull, who was Garza's manager, referred to the 'ghetto-ness' in Garza's office as a reason behind her termination and noted this on her Termination Report. . . .  [T]he Court finds that Garza has demonstrated direct evidence of discrimination sufficient to deny Ranier's Motion for Summary Judgment."); *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1085 (8th Cir. 2010), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) ("The picture of Buckwheat, the comment about fried chicken, and the reference to the ghetto, although not all shown or recited directly to Smith, carry some inferences that they were racially motivated, especially considering the context of the events." (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (stating that references to "ghetto children" were "perhaps racially inappropriate"))); *T.V. v. Sacramento City Unified Sch. Dist.*, 2016 WL 397604, at *4 (E.D. Cal. Feb. 2, 2016) ("Specific facts and anecdotes further support plaintiffs' claim of racial discrimination: the non-GATE class was referred to as the "ghetto" class, and the school administration did nothing to ameliorate that characterization.").

that Ms. Laster lives in the "hood" and not near the store.  *Williamson*, 2006 WL 1987808, at *3 ("Williamson undoubtedly was subjected to an offensive racist comment by O'Reilly when he said that Williamson lived near the 'ghetto.'").  The complaint then alleges that Ms. Chavez accused Ms. Laster of fraud when Ms. Chavez knew that was false and tried to confiscate her debit card.[4]  *Id.* at 7, 8, ¶¶ 15, ¶ 16C.  The Court finds that these allegations support a plausible inference that Ms. Chavez discriminated against Ms. Laster because of her race.  Therefore, the Court finds that Judge Varholak did not err in concluding that Ms. Laster plausibly alleged the second element of her prima facie case of discrimination under § 1981.  *See* Docket No. 39 at 7.  Accordingly, the Court will overrule Circle K's objection.

---

[4] Ms. Laster must prove her discrimination claim under the *McDonnell Douglas* burden shifting framework.  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 n.4 (10th Cir. 2000).  Under this framework, Ms. Laster must "carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *Id.* at 1226 (citation omitted).  "Once the plaintiff has established a prima facie case, the burden then must shift to the [defendant] to articulate some legitimate, nondiscriminatory reason for" its actions.  *Id.* (citation, quotation, and alterations omitted).  "If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual."  *Id.*  The *McDonnell Douglas* test, "however, is an evidentiary standard, not a pleading requirement."  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002).  "A complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination, but it must contain more than threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Bekkem v. Wilkie*, 915 F.3d 1258, 1274 (10th Cir. 2019) (citation, quotation, and alterations omitted).  That is, a "plaintiff should have—and must plead—at least some relevant information to make the claims plausible on their face." *Doe v. Sch. Dist. No. 1, Denver, Colo.,* 970 F.3d 1300, 1311 (10th Cir. 2020) (citation omitted).  Here, although Ms. Laster is not required to allege that Ms. Chavez's stated reason for declining to process her transaction was pretextual, the Court finds that Ms. Laster's allegations of pretext support an inference of discrimination.  *See Ryan-White v. Blank*, 922 F. Supp. 2d 19, 29 (D.D.C. 2013) ("Furthermore, the plaintiff's Complaint alleges facts that, if proven, would call the defendant's legitimate, nondiscriminatory explanations into question. . . .  These factual allegations persuade the Court that the plaintiff's theory of pretext is plausible on its face, and therefore the allegations are sufficient to survive a motion to dismiss." (citation and quotations omitted)).

11

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 39] is **ACCEPTED**.[5]  It is further

**ORDERED** that Circle K's Objection to Magistrate Judge's Recommendation [Docket No. 40] is **OVERRULED**.  It is further

**ORDERED** that defendant's Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 26] is **GRANTED in part** and **DENIED in part**.[6]  It is further

**ORDERED** that plaintiff's second, third, and fourth claims for relief are **DISMISSED without prejudice**.

DATED September 5, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[5] In the response, Ms. Laster indicates that she intends to file an objection to the recommendation.  See Docket No. 41 at 7 ("Plaintiff has addressed Claim-IV in her Objection to Magistrate's Recommendation and has provided a statement from her therapist in support of her Claim-IV.").  However, the Court has not received an objection.  Moreover, at this point, Ms. Laster's objection would be untimely.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); In re Griego, 64 F.3d 580, 583 (10th Cir. 1995) (objections must be filed within fourteen days).  Therefore, the Court will accept Judge Varholak's recommendation to dismiss Ms. Laster's second, third, and fourth claims.

[6] As part of the motion to dismiss, Circle K asks the Court to award it attorney's fees.  Docket No. 26 at 15.  It claims that, under Colo. Rev. Stat. § 13-17-201, when a plaintiff's complaint is dismissed in its entirety, the defendant is entitled to attorney's fees.  Id.  In its objection, Circle K argues that Judge Varholak erred by not dismissing Ms. Laster's § 1981 claim and by not recommending that Circle K's request for attorney's fees be granted.  Docket No. 40 at 2.  Because the Court has found that Ms. Laster has plausibly alleged her § 1981 claim, the Court will not consider Circle K's argument that it is entitled to attorney's fees.