IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No: 1-25-cv-00085-PAB-STV

VALERIE LASTER,

        Plaintiff,

v.

CIRCLE K STORES INC.,

        Defendant.

---

## CIRCLE K'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Circle K Stores Inc. ("Circle K") moves for summary judgment under

Federal Rule of Civil Procedure 56 on Plaintiff Valerie Laster's sole remaining claim,

race discrimination under 42 U.S.C. § 1981 ("Section 1981").

## I.     INTRODUCTION

Laster alleges she was the victim of racial discrimination as a result of a routine

retail transaction in which she attempted to load money onto a prepaid debit card. The

undisputed material facts, however, do not support her claim. Nothing in the record

reflects discriminatory animus, differential treatment, or any unlawful conduct by Circle K

or its employees. The undisputed facts show quite the contrary: Laster's transaction

could not be completed because she attempted it after 8:00 p.m., when Circle K's

uniformly applied policy—enforced automatically through its computer system—

prohibits loads onto prepaid debit cards.

Laster's claim rests entirely on speculation and subjective interpretation of a facially neutral interaction. The undisputed material facts show that race played no role in the outcome of the transaction, and therefore Circle K is entitled to judgment as a matter of law.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Circle K operates convenience stores, including the store located at 7584 Sheridan Boulevard, Westminster, Colorado (the "Store"). Ex. A – Decl. of Sue Fernandez ("Fernandez Decl.") ¶ 2.

2.    Circle K maintains policies governing the types and timing of financial transactions that may be performed at its stores, including restrictions applicable to prepaid debit-card transactions. Fernandez Decl. ¶ 3.

3.    Specifically, the Store's policies, as implemented through its computer system, prohibit employees from loading funds onto prepaid debit cards after 8:00 p.m. Fernandez Decl. ¶ 4.

4.    These restrictions are enforced automatically by Circle K's computer system, such that transactions attempted after 8:00 p.m. cannot be completed and will be declined regardless of the employee processing the transaction. Fernandez Decl. ¶ 5.

5.    Circle K store employees do not have the ability to override these system-based restrictions or manually complete transactions that the system blocks. Fernandez Decl. ¶ 6.

6.    The policies discussed above were in effect on April 8, 2024. Fernandez Decl. ¶ 7.

7.    On April 8, 2024, at approximately 9:00 p.m., Laster, an African-American woman, entered the Store intending to load $1,500 onto a prepaid Green Dot debit card (the "Debit Card"). Ex. B – Decl. of Thomas W. Carroll ("Carroll Decl.") ¶ 3 & Ex. C ("Laster Dep.") Laster Dep. 25:17-26-9; 28:15-17; 29:18-20; 43:1-10.

8.    Laster does not know if any of the other individuals in the Store at the time were attempting to load money onto a prepaid debit card. Laster Dep. 65:8-10.

9.    No customer successfully loaded funds onto a prepaid debit card at the Store after 8:00 p.m. on April 8, 2024. Ex. D – Decl. of Isabell Chavez ("Chavez Decl.") ¶ 9.

10.    When it was Laster's turn to be served, she approached the clerk, Isabell Chavez, who was the only Circle K employee on duty and offered to assist Laster. Laster Dep. 49:24-50:9; Chavez Decl. ¶ 3.

11.    Prior to Laster entering the Store on April 8, 2024, Ms. Chavez had never seen Laster before. Chavez Decl. ¶ 4.

12.    Laster informed Ms. Chavez that she wished to load $1,500 onto the Debit Card, provided the Debit Card to Ms. Chavez, and began counting her cash. Laster Dep. 49:24-50:9.

13.    Ms. Chavez attempted to process the requested $1,500 transaction, but the transaction was declined. Laster Dep. 51:2-9; Chavez Decl. ¶ 5.

14.     At Laster's request, Ms. Chavez attempted a second transaction in the amount of $1,000. That transaction also declined. Laster Dep. 51:10-11; 52:1-6.

15.     Ms. Chavez then attempted a third transaction for $500, which likewise was declined. Laster Dep. 53:7-10; Chavez Decl. ¶ 6.

16.     After the third attempt, Ms. Chavez informed Laster that the transaction would not process and that the system indicated the transaction had been flagged as fraudulent. Laster Dep. 53:7-12; Chavez Dec. ¶ 6.

17.     Ms. Chavez's statements regarding the transactions were based solely on the messages provided by Circle K's computer system. Chavez Decl. ¶ 7.

18.     At no time did Ms. Chavez refuse to process Laster's requested transactions; rather, she attempted to load funds onto the Debit Card each time Laster requested. Chavez Decl. ¶ 8.

19.     After the third declined transaction, Laster did not request any further attempts. Laster Dep. 85:3-11.

20.     Laster alleges that, during the transaction process, another customer, Nora Contreras Gonzalez made various comments to her, that she contends reflect racial animus. Laster Dep. 50:1-54:13; 56:14-24.

21.     Ms. Gonzalez's alleged comments consisted of statements about the amount of cash Laster possessed, where she lived, and where she banked. *Id.*

22.     With respect to Ms. Chavez, Laster only alleges that in response to Ms. Gonzalez's inquiry, Ms. Chavez stated that she had not previously seen Laster at the Store and that Laster did not live in the area; that Ms. Chavez, along with Ms. Gonzalez,

stated that she personally banks with Chase; and that Ms. Chavez attempted to confiscate her card. Laster Dep. 57:4-58:20; 62:3-63:12.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (citations omitted). Although the Court must draw all reasonable inferences in favor of the nonmoving party, the Court also has an affirmative obligation to ensure that factually unsupported claims do not proceed to trial. *Celotex*, 477 U.S. at 323-24.

## IV.  ARGUMENT

Section 1981 prohibits racial discrimination in the making and enforcing of contracts. 42 U.S.C. § 1981. While much litigation involving Section 1981 claims has emanated from the right to make and enforce employment contracts, the statute has also been applied to discrimination claims arising from retail transactions. *See Hampton*

*v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001); *Sharp v. URBN US Retail, LLC*, No. 24-2265-JWB, 2025 WL 358763, at \*2 (D. Kan. Jan. 31, 2025), *appeal dismissed*, No. 25-3038, 2025 WL 2495612 (10th Cir. June 3, 2025). Courts have consistently made clear, however, that "Section 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process." *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 892 (11th Cir. 2007); *see also Withers v. Dick's Sporting Goods, Inc.,* 636 F.3d 958, 965 (8th Cir. 2011) ("[M]ere offending conduct[ ] does not demonstrate interference with a protected activity and any allegations of such activity are insufficient to state a claim under § 1981."); *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) ("Section 1981 does not provide a general cause of action for race discrimination.").

Where, as here, there is no direct evidence of discrimination, Section 1981 claims follow the *McDonnell Douglas* burden-shifting framework. *See Mann v. XPO Logistics Freight, Inc.*, 819 F. App'x 585, 594 (10th Cir. 2020). Under this approach, if Laster satisfies her initial burden of establishing a prima facie case of racial discrimination, the burden shifts to Circle K to show a legitimate, nondiscriminatory reason for the adverse action. *Id.* at 595. If Circle K meets that burden, then Laster must show that the proffered reason was a pretext for intentional discrimination. *Id.*

## A.     Laster cannot establish a prima facie case of discrimination.

To establish a prima face case of discrimination under Section 1981, a plaintiff must show: "(1) membership in a protected class; (2) the defendant intended to discriminate on the basis of race; and (3) the alleged discrimination interfered with a

6

protected activity as defined in the statute (that is, making or enforcing a contract)."

*Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1210 (10th Cir. 2022) (citations omitted).

A plaintiff must also establish that race was a ***but-for cause*** of the alleged

injuries. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333, 341

(2020). "In other words, a § 1981 plaintiff must show that race was not just one factor,

but indeed the reason for, her injuries." *Garcia v. Summit Tech. Sols., LLC*, No. 21-CV-

03077-CNS-MDB, 2022 WL 4467038, at *4 (D. Colo. Sept. 26, 2022), *report and*

*recommendation adopted*, No. 1:21-cv-03077-CNS-MDB, 2022 WL 10028881 (D. Colo.

Oct. 17, 2022). Accordingly, Laster must demonstrate that but-for her race, her ability to

"make and enforce" contracts would not have been impeded or thwarted. *See Arguello*,

330 F.3d at 358 (explaining that Section 1981 "prohibits intentional race discrimination

*with respect to certain enumerated activities*") (emphasis added)).

Laster does not carry her initial burden.

### 1.    Laster cannot establish that Ms. Chavez intended to discriminate against her on the basis of race.

Here, even accepting Laster's material allegations as true, she cannot establish

that Ms. Chavez intended to discriminate against her because of her race.[1] At the

---

[1] As this Court has already held, Circle K cannot be held liable for failing to intervene in the alleged discriminatory conduct of Ms. Gonzalez. *See* [Dkt. 39] at 6 ("[T]he fact that another customer behaved in a racist manner does not necessarily imply that Defendant or its employees likewise acted with racial animus."). That ruling significantly narrows the scope of relevant conduct in this case. Because Circle K's liability cannot rest on Ms. Gonzalez's actions, any evidence concerning her alleged conduct does not bear on the dispositive question of whether the decisionmaker—Ms. Chavez—acted with discriminatory intent. Accordingly, Ms. Gonzalez's actions are immaterial to the central inquiry: whether Ms. Chavez herself harbored discriminatory animus toward Laster based on race. To the extent Laster attempts to rely on Ms. Gonzalez's conduct to

motion-to-dismiss stage, the Court concluded that Laster had plausibly alleged this element of her prima facie case, relying on her claims that: (1) Ms. Chavez remarked that she had not previously seen Laster in the store or in the neighborhood, and (2) Ms. Chavez knowingly and falsely accused Laster of fraud. [Dkt. 42] at 10-11. As this Court previously recognized, it was the combination of these two allegations—considered together and in context—that supported the conclusion that Laster had raised a plausible inference of discriminatory intent. *Id.* at 11.

At summary judgment, however, Laster must come forward with evidence—not mere allegations—demonstrating that race was the but-for cause of Ms. Chavez's action. *Rivera v. Diversified Recovery Bureau LLC*, No. 1:24-CV-01952-SBP, 2026 WL 878674, at *2 (D. Colo. Mar. 31, 2026) *citing with approval* 10B Wright & Miller's *Federal Practice and Procedure* § 2738 (4th ed. May 2025 update) (stating that the nonmovant cannot rely on "mere reargument of a party's case or a denial of an opponent's allegations" to defeat summary judgment).

Laster has not and cannot make that showing.

***First***, there is no evidence that Ms. Chavez's statement about not having seen Laster in the store or neighborhood was racially motivated. To the contrary, the undisputed evidence shows that Ms. Chavez had never, in fact, seen Laster before, SOF ¶ 11, and there is nothing racially motivated about stating a fact like that. In this

---

impute discriminatory motive or to create an inference of bias, such an effort is misplaced.

8

context, the statement is facially neutral and, at most, constitutes an ambiguous remark that does not reference any protected characteristic.

Courts consistently hold that ambiguous, generalized comments—even those that might be susceptible to multiple interpretations—do not support an inference of discrimination. As the Supreme Court explained, "[t]he speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006). Thus, without additional evidence suggesting a discriminatory meaning, courts will not assume that a facially neutral statement reflects racial animus. Consistent with this principle, courts have repeatedly rejected efforts to infer discrimination from similarly ambiguous language, emphasizing that doing so would amount to mere speculation. *E.g.*, *Umani v. Mich. Dep't of Corr.,* 432 F. App'x 453, 459 (6th Cir. 2011) (finding the use of the phrase "you people" does not qualify as a clear reference to race and that,"[w]ithout other allegations indicating a racist meaning, this ambiguous comment is not in and of itself racist"); *Alvarado v. Health Net, Inc.,* 21 F.3d 1111, 1994 WL 141271, at *5 (9th Cir. 1994) (finding statements like "I don't understand you people" are not necessarily racial).

The same reasoning applies here. Ms. Chavez's alleged comments reflect nothing more than a truthful lack of familiarity with Laster as a customer or resident. It contains no reference—explicit or implicit—to race or any protected characteristic, and nothing about its context suggests otherwise.

***Second,*** there is no evidence that the alleged accusation of fraud was tied in any way to Laster's race. Instead, the undisputed material facts demonstrate that Ms.

Chavez was not relying on subjective assumptions or discriminatory stereotypes, but instead was relaying information generated by the Store's computer system indicating that the transaction was flagged as fraudulent. SOF ¶¶ 16-17. Ms. Chavez's conduct, therefore, was grounded in an objective, nondiscriminatory source rather than any perception of Laster's identity.

When further considering that there is no evidence that there were any similarly situated customers who were treated worse than her, or were able upload money onto a prepaid debit card after 8:00 p.m., it becomes apparent that Laster cannot establish that the denial of her transaction occurred under circumstances giving rise to an inference of discrimination. SOF ¶ 9; *see also Harris v. Bath & Body Works, LLC*, No. 3:22CV23351-TKW-HTC, 2023 WL 6976910, at *6 (N.D. Fla. Sept. 18, 2023), *adopted*, 2023 WL 6977795 (N.D. Fla. Oct. 23, 2023) (finding individuals were not comparable where they did not engage in the same type of transaction).

Ultimately, Laster's claim rests on conjecture; namely, that a neutral statement about not being recognized in a store or neighborhood, coupled with an accusation of wrongdoing, must have been racially motivated. But speculation cannot substitute for evidence. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.").

Because Laster cannot identify evidence from which a reasonable juror could conclude that Ms. Chavez's conduct was motivated by racial animus, her claim fails.

        **2.**      **Laster cannot establish a but-for connection between Ms. Chavez's alleged animus and her inability to complete the transaction.**

Even assuming that Laster could point to evidence suggesting that Ms. Chavez harbored some form of racial animus, her claim nevertheless fails because she cannot establish the required but-for causal connection between that alleged animus and the denial of her transaction. A plaintiff must do more than identify purportedly biased remarks; she must show that such bias actually interfered with her ability to make or enforce a contract. *E.g., Ortiz Fuentes v. Procter & Gamble*, No. CIV. 05-1096 (PG), 2006 WL 2463963, at *10 (D.P.R. July 12, 2006) (holding that the plaintiff was required to "establish a sufficient nexus between the asserted discrimination and some contractual right or relation with [the defendant].") In other words, discriminatory animus standing alone is insufficient; the plaintiff must show that it was the but-for cause of the alleged contractual impairment.

Here, the undisputed material facts foreclose any such inference. It is undisputed that Laster's transaction could not be processed because she attempted to load funds onto her prepaid debit card after 8:00 p.m.—a time at which the Store's policies, as implemented through its computer system, categorically and automatically prohibited employees from completing such transactions. SOF ¶¶ 2-6. In light of this undisputed evidence, even assuming that Ms. Chavez harbored some personal animus toward Laster, the same result would have occurred because the policy—and the system implementing it—mandated denial of the transaction once the cutoff time had passed. *Id.*

11

Under these circumstances, any assertion that racial animus played a determining role in the failed transaction is not only unsupported by the record, but contradicted by the objective evidence demonstrating that the transaction was barred for a wholly independent and nondiscriminatory reason. *Id.*

**B.    Circle K had a legitimate, nondiscriminatory reason denying Laster's transaction.**

Even assuming that Laster could establish a prima facie case of discrimination, Circle K can readily satisfy its burden of articulating a legitimate, nondiscriminatory reason for the denial of her transaction. Courts within this jurisdiction have consistently emphasized that an employer's burden at this stage is "exceedingly light." *E.g.*, *Futrell-Smith v. Brinker Int'l, Inc.,* No. 23-CV-03153-STV, 2025 WL 2337069, at \*5 (D. Colo. Aug. 13, 2025). Circle K need not prove that its proffered reason was correct, wise, or even ultimately persuasive; rather, it need only clearly set forth a facially legitimate explanation for the challenged action. *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992).

Applying these principles, the existence of a facially neutral policy governing transaction cut-off times more than satisfies Circle K's minimal burden, shifting the inquiry to whether Laster can demonstrate that this justification is merely a pretext for unlawful discrimination. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 51-52 (2003) (explaining that implementing a facially neutral policy is, "by definition, a legitimate, nondiscriminatory reason"); *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 56 (1st Cir. 1999) ("Kodak met its burden of production—and eliminated the presumption that it had

discriminated—by contending that its layoff decision was based solely on racially neutral performance appraisal scores"); *see also Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 388 (1982) (recognizing that the drafters of § 1981 were not concerned with practices that were facially neutral).

### C.    Laster cannot establish pretext.

Because Circle K can establish a legitimate, nondiscriminatory reason for its actions, Laster must show that this reason is pretext for discrimination. Laster may do this by showing such "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Circle K's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence," and therefore infer that Circle K's actions were not for the reasons given. *Plump v. Gov't Emps. Ins. Co.,* 161 F.4th 1222, 1233 (10th Cir. 2025).

Here, the record contains no evidence to create a genuine issue of fact about pretext. There is no dispute that Laster attempted to load funds onto her prepaid debit card after 8:00 p.m., at which point Circle K's facially neutral policies and system constraints prohibited the completion of such transactions. SOF ¶¶ 2-7. There is likewise no evidence that the transaction was improperly declined, that Ms. Chavez misrepresented the reason for the denial, or that she exercised any discretion in refusing the transaction. On the contrary, the undisputed evidence demonstrates that Ms. Chavez lacked the ability to override the system and was required to follow the automated restrictions imposed by Circle K's policies. *Id.* The outcome was therefore

dictated entirely by neutral operational rules, not by any individualized judgment or discriminatory motive, and not by anything unique to Laster or Ms. Chavez.

Notably, Laster has no evidence that Circle K's explanation is false or internally inconsistent—only speculation that discrimination must have played a role. But as stated above, speculation is insufficient to establish pretext. *See Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) ("The evidence of but-for causation must be based on more than mere speculation, conjecture, or surmise." (internal quotations omitted)).

Courts confronted with materially indistinguishable facts have reached the same result. In *Daniels v. Advantage Rent-A-Car Inc.*, 80 F. App'x 936 (5th Cir. 2003), for example, the plaintiffs alleged racial discrimination under Section 1981 after their debit card was declined during a rental transaction. *Id.* at 937-38. There, as here, the record demonstrated that the defendant's employee merely processed the transaction in the ordinary course and relied on the result generated by the company's payment system. The Fifth Circuit affirmed summary judgment, explaining that where a defendant asserts that a card was declined by its system, and the plaintiff presents no evidence that the decline did not actually occur or that employees misrepresented the result, the plaintiff cannot establish pretext. *Id.* at 940.

The same is true here. Laster presents no evidence that Circle K's system did not have an 8:00 p.m. cutoff policy, that her transaction was improperly rejected, or that Ms. Chavez treated her differently than any other customer attempting the same transaction after the cutoff time. Indeed, Laster does not dispute that this was the Store's policy.

14

Laster Dep. 31:14-32:2. Accordingly, there is no basis upon which a reasonable factfinder could conclude that Circle K's articulated reason is unworthy of credence.

So whether it's because Laster cannot establish a prima facie case or because she cannot demonstrate pretext, Circle K is entitled to summary judgment on her claim.

## V.    CONCLUSION

There is simply no evidence that Circle K violated Section 1981. The undisputed material facts establish that Laster's transaction was denied for a legitimate, nondiscriminatory reason: the application of a neutral, uniformly enforced policy and corresponding system limitation that prohibited transactions like Laster's after 8:00 p.m. Laster has no evidence that race was a but-for cause of the denial, that Ms. Chavez acted with discriminatory intent, or that Circle K's explanation is false or pretextual. Instead, the record demonstrates that the outcome of the transaction was dictated entirely by objective, nondiscretionary rules that applied equally to all customers.

Because Laster cannot establish a prima facie case of discrimination, and cannot—under any interpretation of the evidence—carry her burden to show pretext, her claim fails as a matter of law and Circle K is entitled to judgment as a matter of law.

WHEREFORE, Circle K respectfully requests that the Court enter summary judgment in its favor, dismiss Laster's Complaint in its entirety, award Circle K its costs, and grant any further relief the Court deems just and proper.

Respectfully submitted this 11th day of June, 2026.

*s/ Thomas W. Carroll*

Thomas W. Carroll
Julian G.G. Wolfson
LITTLER MENDELSON, P.C.

15

1900 Sixteenth Street, Suite 800
Denver, CO  80202
Phone: 303.629.6200
Facsimile: 303.629.0200
tcarroll@littler.com
jwolfson@littler.com

*Attorneys for Defendant Circle K Stores Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of June, 2026, I filed the foregoing **CIRCLE**

**K'S MOTION FOR SUMMARY JUDGMENT** using the Court's electronic filing system

and served it through First Class U.S. Mail and email on the following:

Valerie Laster
4875 W 81st Place #2H
Westminster, CO 80031
lastervalerie@gmail.com

*Plaintiff (Pro Se)*

*s/ Patricia Perez*
Patricia Pere